IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil No. 3:18-cv-00405-RJC

| | |
|---|---|
| DEBRA L. KENNEDY ) ) Plaintiff, ) ) v. ) ) NANCY A. BERRYHILL, ) Acting Commissioner of Social ) Security, ) ) Defendant. ) | ORDER |

**THIS MATTER** comes before the Court on the parties' cross Motions for Summary Judgment, (Doc. Nos. 12, 14), and the parties' associated briefs and exhibits. The motions are ripe for adjudication.

I. BACKGROUND

A. Procedural Background

Debra Lynn Kennedy ("Plaintiff") seeks judicial review of Nancy A. Berryhill's ("Defendant" or "Commissioner") denial of her social security claim. Plaintiff filed applications for disability insurance benefits under Title II of the Social Security Act ("SSA") and supplemental security income under Title XVI of the SSA on March 31, 2014, alleging a disability onset date of February 26, 2014. (Doc. Nos. 10 to 10-1: Administrative Record ("Tr.") at 14). Her applications were denied first on August

1

25, 2014, (Tr. 121), and upon reconsideration on February 11, 2015, (Tr. 128, 136). Plaintiff filed a timely request for a hearing on August 31, 2015, (Tr. 148), and an administrative hearing was held by an administrative law judge ("ALJ") on February 27, 2017. (Tr. 37).

Following this hearing, the ALJ found that Plaintiff was not disabled under the SSA. (Tr. 11–24). Plaintiff requested a review of the ALJ's decision, but the Appeals Council denied Plaintiff's request for a review. (Tr. 1). After having exhausted her administrative remedies, Plaintiff now seeks judicial review of Defendant's denial of her social security claim in this Court.

B. Factual Background

The question before the ALJ was whether Plaintiff was disabled under Sections 216(i), 223(d), and 1614(a)(3)(A) of the SSA. (Tr. 14). To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the SSA.[1] Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). Plaintiff alleges that her disability began on February 26, 2014, due to her impairments of seizures, bipolar disorder, depression, posttraumatic stress disorder ("PTSD"), schizophrenia, and insomnia. (Tr. 15–16, 207).

After reviewing Plaintiff's record and conducting a hearing, the ALJ found that

---

[1] Under the SSA, 42 U.S.C. § 301, et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

2

Plaintiff did not suffer from a disability as defined in the SSA. (Tr. 24). In reaching his conclusion, the ALJ used the five-step sequential evaluation process established by the Social Security Administration for determining if a person is disabled. The Fourth Circuit has described the five steps as follows:

> [The ALJ] asks whether the claimant: (1) worked during the purported period of disability; (2) has an impairment that is appropriately severe and meets the duration requirement; (3) has an impairment that meets or equals the requirements of a listed impairment and meets the duration requirement; (4) can return to [her] past relevant work; and (5) if not, can perform any other work in the national economy.

Radford v. Colvin, 734 F.3d 288, 290–91 (4th Cir. 2013) (paraphrasing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant has the burden of production and proof in the first four steps. Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015). However, at the fifth step, the Commissioner must prove that the claimant is able to perform other work in the national economy despite her limitations. See id.; see also 20 C.F.R. § 416.960(c)(2) (explaining that the Commissioner has the burden to prove at the fifth step "that other work exists in significant numbers in the national economy that [the claimant] can do"). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 22–24).

In reaching his decision, the ALJ first concluded at steps one through three that Plaintiff was not employed, that she suffered from severe mental impairments, and that her impairments did not meet or equal any of the impairments listed in the Administration's regulations. (Tr. 16–17). Therefore, the ALJ examined the evidence

3

of Plaintiff's impairments and made a finding as to Plaintiff's Residual Functional Capacity ("RFC"):

> [T]he claimant has the [RFC] to perform medium work . . . except she must avoid concentrated exposure to hazards; and she is limited to simple, routine, repetitive tasks in a stable environment at a nonproduction pace with occasional interpersonal interaction. She is expected to be off task nine percent (9%) of an eight-hour workday.

(Tr. 19). Having established Plaintiff's RFC, the ALJ concluded that Plaintiff could not perform the work in which she had previously been employed. (Tr. 22). Therefore, the ALJ proceeded to the fifth and final step of the process: determining whether, given the limitations embodied in her RFC, Plaintiff could perform any work that existed in significant numbers in the national economy. (Tr. 22–23). To make that determination, the ALJ relied on the testimony of a Vocational Expert ("VE"). The VE testified that Plaintiff would be able to perform at least three representative occupations that exist in significant numbers in the national economy. (Tr. 23, 57–58). The ALJ accepted the VE's testimony and concluded that Plaintiff's impairments did not prevent her from working; consequently, Plaintiff's applications for Title II and Title XVI benefits were denied. (Tr. 23–24).

## II. STANDARD OF REVIEW

The Court must decide whether substantial evidence supports the final decision of the Commissioner and whether the Commissioner fulfilled her lawful duty

in her determination that Plaintiff was not disabled under the SSA. See 42 U.S.C. §§ 405(g) and 1382(c).

The SSA, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The district court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the SSA provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and [do]ing more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner,

assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith v. Schweiker, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

Plaintiff alleges that the ALJ failed to (1) consider whether listings 12.05 and 12.15 were met or equaled despite finding that Plaintiff had severe mental impairments, and (2) explain how, in his RFC assessment, he concluded that Plaintiff would be off task nine percent of the time. Because the Court agrees with Plaintiff's second allegation of error, the Court remands the case on that basis.

Plaintiff argues that the ALJ erred in determining her RFC when, in concluding that Plaintiff would be off task nine percent of an eight-hour workday, the ALJ did not provide a logical bridge between the evidence and the off-task calculation. A claimant's RFC is an assessment of the "most [an individual] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC assessment requires a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015). Importantly, "the ability to *perform* simple tasks differs from the ability to *stay* on task." Id. at 638 (emphasis added). Mascio therefore provides that the ALJ is required to "either adopt a limitation that addresses a claimant's ability to stay on task or explain why such a limitation is

6

unnecessary." Curry v. Berryhill, No. 1:17-cv-00317, 2019 WL 1331749, at *3 (W.D.N.C. Mar. 25, 2019). In other words, each conclusion made in assessing the RFC must be accompanied by a discussion of supporting evidence. Conclusory statements present in the RFC assessment without accompanying explanation are insufficient under Mascio.[2]

Here, at Step Three, the ALJ found that Plaintiff's RFC would allow her to perform medium work with avoidance of concentrated exposure to hazards. (Tr. 19–20). Any available work would be limited to those tasks which are simple, routine, repetitive, and in a stable environment at a nonproduction pace with occasional interaction with other persons. (Tr. 19). The ALJ further concluded that Plaintiff is "expected to be off task nine percent of an eight-hour workday." (Id.). The ALJ proceeded to substantiate the first two conclusions with discussion of Plaintiff's various health issues. (Tr. 19–22). For example, the ALJ noted that at her hearing, Plaintiff stated that she had six seizures in 2016, but her medical records corroborated at least two of those seizures. (Tr. 20). These seizures led to Plaintiff being prescribed medication, which the ALJ determined was "effective for controlling her seizures." (Id.).[3] The occurrence of seizures nevertheless prompted the ALJ to limit Plaintiff to work that avoids "concentrated exposure to hazards." (Id.). Next,

---

[2] See, e.g., Curry, 2019 WL 1331749, at *4 ("[T]he Court could guess that this is what the ALJ hung his hat on in determining that limiting Plaintiff to simple, routine jobs and tasks would adequately account for Plaintiff's mental limitations . . . this is the type of guesswork that Mascio prohibits.").

[3] "If a symptom can reasonably be controlled by medication or treatment, it is not disabling" under the Act. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986).

7

the ALJ cited Plaintiff's mental health records, including treatment records from Nurse Practitioner Emily Gibbons and test results from consultative psychologist Rebecca Church, in determining that Plaintiff should be restricted to "simple, routine, repetitive tasks of unskilled work." (Tr. 21). The treatment records of Gibbons indicated that medication and psychiatric counseling "appear[ed] to have significantly improved the claimant's symptoms" associated with her bipolar disorder, panic disorder, and PTSD. (Id.). The test results obtained from psychologist Church illustrated that Plaintiff might have "difficulties in keeping up with her peers"; Plaintiff's ability to sustain attention, exert mental control, and concentrate were in the average range; and her ability to process visual material without error was extremely low compared to her peers. (Id.). The ALJ thus concluded that Plaintiff would be "capable of understanding, remembering, and carrying out simple instructions" as evidenced by her average test results, but that Plaintiff would be limited to a non-production pace because "her ability to keep pace is questionable." (Id.). The ALJ also found persuasive State agency findings that Plaintiff "could perform unskilled work at the medium exertional level." (Tr. 22).

The ALJ then made a determination regarding Plaintiff's ability to remain on task, as required by Mascio: "In considering the claimant's problems with stress, she is expected to be off task nine percent of an eight-hour workday." (Tr. 21). Other than this cursory, one-sentence determination, the ALJ did not expound upon his reasoning for this conclusion. (Id.). Nowhere in the rest of the ALJ's discussion of Plaintiff's RFC—indeed, nowhere in the entire ALJ decision—does he identify or

8

explain his reasoning as to why Plaintiff's stress translates into her being off task nine percent of the time. In the absence of explanation, the Court is left to pontificate on where the ALJ came up with the nine-percent figure and why this limitation adequately accounts for Plaintiff's limitations. This is the exact type of guesswork that <u>Mascio</u> and its progeny prohibit this Court from doing.

Moreover, the Court finds the ALJ's nine-percent determination suspect in light of the VE's testimony regarding off-task percentages. At the hearing, the VE testified that being off task over ten percent of the workday would be excessive and "would preclude work for that individual." (Tr. 59). Therefore, the Court finds it curious that the ALJ, after hearing testimony that an off-task percentage of ten percent would preclude a claimant's ability to work, limited Plaintiff to being off task only nine percent of the workday. There is no discussion in the ALJ's decision about how Plaintiff's limitations warrant any corresponding off-task limitation in her RFC, let alone one of nine percent—just below the VE's disability threshold. Therefore, in the absence of explanation, it appears to the Court that the nine-percent determination was divined from thin air.

Plaintiff claims that the ALJ "arbitrarily picked a percentage . . . to satisfy the <u>Mascio</u> requirement but below the 10% threshold" supplied by the VE. (Doc. No. 12 at 18). While the Court refrains from attributing suspect motives to the ALJ in making this determination, the Court finds remand warranted based on the ALJ's failure to construct an "accurate and logical bridge from the evidence to his conclusion." <u>Monroe v. Colvin</u>, 826 F.3d 176, 189 (4th Cir. 2016) (quoting <u>Clifford v.</u>

9

Apfel, 227 F.3d 863, 872 (7th Cir. 2000)). Indeed, the Fourth Circuit recently echoed this proposition when it found that an ALJ had failed to sufficiently explain the correlation between an RFC determination and the evidence when the logical bridge is not apparent to the reviewing court:

> [T]he ALJ's evaluation of [claimant's] mental impairments for purposes of the RFC contains too little explanation for us to meaningfully review it. Without further explanation, we simply cannot tell whether the RFC finding . . . properly accounts for [claimant's] limitations in concentration, persistence, and pace. . . . Only then will we or any court be able to meaningfully review the ALJ's RFC finding.

Thomas v. Berryhill, 916 F.3d 307, 312 n.5 (4th Cir. 2019), as amended (Feb. 22, 2019).

Here, it is impossible for this Court to determine whether the RFC the ALJ assigned Plaintiff adequately accounts for her limitations. It is well established that when an ALJ goes "straight from listing evidence to stating a conclusion," meaningful review is frustrated. Thomas, 916 F.3d at 311. Here, without a narrative discussion laying out the connection between the evidence and the conclusion of the nine-percent off-task limitation, the Court is left to guess as to how the ALJ reached this finding.[4] This sort of guessing game is at the crux of what Mascio prohibits; as such, the Court

---

[4] Alternatively, Defendant argues that the nine-percent off-task limitation was an act of generosity by the ALJ. (Doc. No. 14 at 14.). Because the ALJ neglected to build an accurate and logical bridge between the evidence and his conclusions, the Court cannot discern whether the ALJ made this finding based on the medical evidence or personal generosity. Regardless of the motive underlying the adoption of this limitation, the ALJ's lack of explanation precludes this Court's ability to conduct a meaningful review. Any purported generosity of the ALJ does not change the Court's determination that remand is warranted.

will not speculate as to why nine percent was the magic number and rather, finds remand appropriate. See Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 663 (4th Cir. 2017) (rebuking an ALJ to "[s]how [his] work" and explain the RFC assessment).

IV. CONCLUSION

Since the ALJ assigned Plaintiff an off-task limitation of nine percent in the RFC, the ALJ was required to provide an accompanying explanation. Such an explanation is missing in the ALJ's decision, warranting remand. Accordingly, the Court remands this case on Plaintiff's second allegation of error, but the ALJ should further note Plaintiff's other objections to his decision upon reconsideration.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 11), is **GRANTED**;
2. Defendant's Motion for Summary Judgment, (Doc. No. 13), is **DENIED**;
3. This matter is **REMANDED** for further proceedings consistent with this Order; and
4. The Clerk of Court is directed to close this case.

Signed: August 6, 2019

*[Signature]*

Robert J. Conrad, Jr.
United States District Judge